## Julius Starrett v. Anna E. Keating.

1. SETTLEMENT OF ESTATES—*Fraud in—Relief When Barred by Laches.*—Heirs, seeking relief against fraud in the settlement of estates, must be vigilant and prompt, and must act without unnecessary delay after the discovery of the fraud. If they fail to do so, and especially if after such discovery they deal with property distributed to them in kind as their own, they will be held to have ratified the transaction and a court of equity will afford them no relief.

2. SAME—*Power of a Court of Equity to Review.*—In this case a court of equity on application of heirs opened an estate six years after the same had been settled and the administrator discharged, for the purpose of re-adjusting his settlement of the same.

3. EQUITY—*He Who Asks Equity Must Do Equity.*—A complainant seeking to rescind a transaction for fraud is required to put the defendant in *statu quo,* unless prevented by some cause for which he is not responsible.

**Bill for Re-adjusting the Settlement of an Estate.**—Error to the Circuit Court of Scott County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed November 15, 1895.

H. T. HELM, LYNN HELM and CHAS. H. DUMMER, attorneys for plaintiff in error, contended that the jurisdiction of the County Court over every subject and topic presented by the final report of the administrator in this case, and his application for discharge, was absolute and conclusive, and the finality of such adjudication could only be questioned in an appeal in the manner pointed out by the statute. Such is the unquestionable result of all of the adjudications in this State. Propst v. Meadows, 13 Ill. 157; Bennett v. Wolff, 70 Ill. 80; Hanna v. Yocum, 17 Ill. 387; Housh v. People, 66 Ill. 181; Bostwick et al. v. Skinner, 80 Ill. 147; Blair v. Sennott, 35 Ill. App. 369; 134 Ill. 84.

Notice of the facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry, is equivalent to knowledge of all the facts which a reasonably diligent inquiry would disclose. Whatever is notice enough to excite attention, put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant with it. Kennedy v. Green, 3 Mylne & K. 722; Wood v. Carpenter, 101 U. S. 135–141; Parker v. Kuhn, 21 Neb. 413; 32 N. W. Rep. 74; Wright v. Davis, 28 Neb. 479, 483; 44 N. W. Rep. 490.

It is in conformity with the same principle that parties who have long acquiesced in settlements of accounts, or of

other mutual dealings, are not permitted to re-open or disturb them; and this is true, even though the parties stood in confidential relations toward each other, as trustee and *cestui que trust*, principal and agent, and the like, and the settlement embraced matters growing out of such relations. Pomeroy's Eq. Jur., 820; Bright v. Legerton, 6 Jur. N. S. 1179; Clark v. Hart, 5 Jur. N. S. 447.

If a party has knowledge that he has been defrauded, and yet subsequently confirms the original contract by making new agreements and engagements respecting it, he thereby waives the fraud and abandons his claim to equitable relief. Rogers v. Higgins et al., 57 Ill. 250; Edwards v. Roberts, 7 Smedes & Marshall 544; Parson v. Hughes, 9 Paige 591; Fobl. Eq., 129 Note (r).

A party defrauded can not be allowed to deal with the subject-matter of the contract and afterward rescind it. Musson v. Bovet, 1 Denio 74; Perry v. Pearson, 30 Ill. App. 390; 135 Ill. 238.

The doctrine, repeatedly announced by this court, is that a party can not affirm a contract in part and rescind it as to the residue. If he rescinds he must do so *in toto*. He must put the opposite party in as good a condition as he was in before the sale, by a return of the property purchased, unless it is entirely worthless. Buchenau v. Horney, 12 Ill. 338; Bowen v. Schuler, 41 Ill. 193; Ryan v. Brandt, 42 Ill. 78; King v. Mason, 42 Ill. 223.

J. A. WARREN and J. M. RIGGS, attorneys for defendant in error, contended that if there is any misrepresentation, or concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose, and pronounce the transaction void, and, as far as possible, restore the parties to their original rights. 1 Story's Eq. Jur. (11th Ed.,) Sec. 218.

Where the statute fixes the time within which the claim would be barred if asserted at law, courts of equity will refer to the statute as the means of ascertaining the reasonable period in which the bar will be complete in equity,

thus, by analogy, following the law. In cases, however, where there is no statute applicable, the time in which a a party will be barred from relief in a court of equity, must necessarily depend upon the peculiar circumstances of each case. Harris v. McIntyre, 118 Ill. 288.

Delay in instituting proceedings, where the parties are members of the same family, is not so strictly regarded as where they are strangers to each other. Yeaton v. Yeaton, 4 Brad. 593; Zaver v. Fielder, 9 Jur. N. S. 190.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a bill in chancery, filed by Anna E. Keating and Susan E. Starrett against Julius Starrett, for the purpose of re-adjusting a settlement of the estate of Washington Starrett, deceased.

Anna E. Keating and Julius Starrett, brother and sister, were the sole heirs, and Susan E., was the widow of said Washington Starrett, who died intestate. The estate consisted mainly of money and promissory notes. Of the latter, one was executed by one Rankin and secured by a second mortgage upon a farm containing some 465 acres and some five or six town lots in Winchester. Another signed by one Simms was secured by a mortgage upon certain town property also in Winchester.

There was some litigation growing out of various matters not important here, but the estate was successful therein. In order to realize on the Rankin claim, it became necessary to remove a prior mortgage amounting to some $5,000, and in order to realize on the Simms claim, the sum of $1,000 had to be advanced on account of the debtor's right of homestead.

These two sums were taken from the general funds of the estate, and were respectively added to the original claims, so that the certificate of purchase on the Rankin property was for $11,105, and that on the Simms property for $4,020.

Soon after these certificates of purchase were obtained, the administrator presented his final report, showing the condition of the entire estate, charging himself with all the

assets and collections, including these certificates of purchase at their face value, and taking credit for all moneys paid out on claims and expenses, including the amounts paid as above stated to remove said prior claims of mortgage and homestead.

In that report he represented that Mrs. Keating and Mrs. Starrett were willing to take the certificates of purchase at their face and to take the rest of their shares in money; that he had made such an arrangement with them and stated the amount necessary to be paid to each in addition to what they had already received. He presented, with said report, a writing signed by them waiving their right to be notified of the filing of the report. The court approved the report and discharged the administrator.

Soon after, the settlement was carried out and releases were executed accordingly.

Nearly six years later this bill was filed in which it was alleged that the complainants relied wholly upon the defendant in all matters; that they signed any papers he requested at all times without reading, and that they were induced to take said certificates of purchase by the gross misrepresentation of defendant as to the value of the property covered thereby, and that said property was worth very much less than the amounts of the certificates.

The bill alleged various acts of mal-administration and various erroneous charges and credits, and asked for a complete restatement of the whole matter, including a reduction of the certificates of purchase to the true value of the property, and that the defendant be required to account to them for the difference.

The decree found that the property included in the Rankin certificate was worth less than the face of the certificate by $2,851.67; that the defendant had charged the complainant Keating about $600 too much on account of an advancement, that he had charged $141.25 too much on account of his commissions, and that he had overcharged himself about $600 on account of the property taken by the widow.

It found that he had dominated the will and mind of each

of the complainants so that they ought not to be held responsible for any of their acts in signing releases or other papers in connection with the estate, and that he had cheated and overreached them in said settlement so that the same should be set aside. It charged him with the whole of said difference in value in the Rankin matter, with two-thirds of the overcharge on commissions, with one-third of the overcharge on the advancement, and gave him credit for the overcharge against himself on account of personal property.

The result was a decree in favor of each of the complainants, amounting in the aggregate to $4,441.15, to reverse which the present writ of error is prosecuted.

The decree made no finding as to the value of the Simms property, nor was there any proof in that regard.

It will be noticed that the main item upon which the decree is based, is the alleged difference between the actual value of the Rankin property and the face of the certificate. We do not care to discuss the evidence upon which the difference is estimated.

What a farm is worth is very much a matter of opinion, and very few cases illustrate this more than the present. What it will produce depends very much upon circumstances, and especially upon the management. It is quite apparent that this farm was not well managed, and it is not difficult to see why the complainants got very tired of it. Yet under better management it might, and probably would, have produced a fair per cent upon the sum named in the certificate of purchase. We are, however, not disposed to overrule the conclusion of the chancellor, that at the time of the hearing, and perhaps at the time of the foreclosure and sale, the land was worth less than the bid. When the deceased invested his money, he no doubt was aware of the prior incumbrance and considered the property ample security for all that was against it. Change of times and want of care might, and perhaps did, reduce the value to the figure found by the court.

It is a fundamental feature of this decree that the complainants were so dominated by the defendant that they

were helpless in his hands and that they were either unaware of what he was doing or unable to appreciate it. We are not impressed with this view of the case. Making all due allowance for the relationship, that he was the son of the one and the brother of the other, we think they were neither very confiding nor very weak and that they had an ordinarily keen disposition, and capacity, to take care of their own interests. The record is voluminous.

We deem it not necessary to discuss the evidence in detail and need only state the conclusion.

They certainly knew what the arrangement was, and accepted it without objection.

Before the time for taking the deeds under the certificates had expired they were advised through a letter from Simms that they were greatly overreached and cheated in the transaction, but disregarded the suggestion and proceeded to take deeds from the master in chancery, and followed this by taking possession of the property and renting the same to such tenants as they saw fit.

Still later they sold the Simms property, and at various times sold the town lots and a part of the land covered by the Rankin certificate.

It is true the Simms property was sold for considerably less than the amount named in the certificate of purchase, but there is no proof that it was really worth less, and there is no little reason for accepting the suggestion of counsel that by reason of the mismanagement of Walter Keating, to whom Mrs. Starrett loaned quite a sum of money, and perhaps from other causes, she was so embarrassed that she was willing to sacrifice this property in order to raise needed funds, a matter for which defendant was in no wise to blame. After a lapse of nearly six years from the approval of the report, of which they were no doubt fully aware, they filed this bill in which they made no offer to return the overvalued property. Indeed they could not make such offer because they had sold very substantial portions of it. It is undoubtedly the rule that parties seeking such relief must be vigilant and prompt and must act without unnecessary

delay after discovery of the fraud, and if they fail to do so, and especially if after such discovery they deal with the property as their own, they will be held to have ratified the transaction and a court of equity will not under such circumstances heed their complaint. Greenwood v. Finn, 136 Ill. 146; Day v. F. S. I. & I. Co., 53 Ill. App. 165; same case, 153 Ill. 293.

And it is a familiar rule that as he who asks equity must do equity, a complainant seeking to rescind a transaction for fraud is required to put the defendant in *statu quo*, unless prevented by some cause for which he is not responsible. It is, however, insisted that these well established rules are not applicable to this case because of the fiduciary and family relation sustained by defendant to the complainants. Such relation is by a court of equity regarded as calling for the utmost good faith and will induce the court to scrutinize all transactions between the parties with great care. The necessity of such care, and the fraud and imposition which courts so often find occasion to point out and condemn in dealings between parties so related, have led to vigorous expressions in some such cases.

We see no reason why the ordinary rules applicable to complainants seeking equitable relief should be disregarded in this case. As already stated these complainants knew well enough what they were doing, and conceding that they may have listened too much to the defendant as to the value of the property, as to which, however, there is great conflict in the proof, yet long after they knew or had reason to know that they were not realizing what they had expected from it, they not only retained it, but, as already stated, sold some of it and kept the proceeds.

We know of no reason why the arrangement for a distribution of the property, such as was here made, should not bind the parties if it was made fairly, without fraud or imposition. The statute authorizes the distribution of personal property in kind where a sale is not necessary for the payment of debts and legacies. Chap. 3, Par. 92, R. S.

If this transaction is to be set aside it must be because it

was vitiated by fraud, as indeed the bill alleged, and as the decree finds. But for such fraud it would subsist as a lawful and valid settlement. Why are these complainants relieved from the rules ordinarily applicable?

But conceding all that is argued for the complainants in this behalf we think the decree is excessive.

The diminution in value in the Rankin property was by the court found to be $2,851.67. If this is right and if the transaction ought to be set aside the whole estate would be diminished by just this amount, and each distributee should bear a just proportion of the loss and no more; yet the decree places the entire loss on the defendant and requires him to pay half of it to each of the complainants, which is manifestly unjust. With regard to the item of advancement also we think the decree is erroneous. It is quite apparent that the deceased intended to charge Anna E. Keating with all the money paid to or on account of her son, Walter Keating. The sum found by the decree was $243.35 as against $842.25 charged in the report.

It is conceded that the charge so made in the report is too large—that this was a mere mistake, however, growing out of the peculiar manner in which the entries appear in the book kept by deceased, and that the true amount is about $590. It is quite difficult to arrive at the exact amount from the figures as they appear in the record, but we are quite sure the amount allowed by the decree is much too small and that the correct amount is about $500, twice as much as the allowance, or more.

With reference to this item, as well as that for overcharge in commissions, we see no reason why a court of equity should be asked to grant relief, as they were matters within the jurisdiction of the County Court. They arose from mistake, no doubt, and could have been corrected by appeal; so also as to the error against the administrator of $600.

Waiving, however, this objection to these items, a restatement of the whole account upon the theory of the decree, would stand as follows :

| | |
|---|---:|
| Gross amount of estate...................... | $40,141.76 |
| Advancement acc't Walter—say............. | 500.00 |
| | 40,641.76 |
| Current expenses paid...................... | 10,710.37 |
| | 29,931.39 |
| Deduct deficit on Rankin certificate.......... | 2,851,67 |
| | 27,079.72 |
| Add error in commissions................... | 141.29 |
| Divide by................................. | 3)27,221.01 |
| Share of each party........................ | $9,073.67 |
| Mrs. Keating should be charged with one-half | |
| Simms certificate......................... | $2,010.00 |
| One-half Rankin certificate................. | 4,126.65 |
| Cash paid before final report................. | 825.16 |
| "      "   after final report................... | 961.15 |
| Advancement acc't Walter.................... | 500.00 |
| | $8,422.96 |
| Amount due Mrs. Keating according to the | |
| theory of the decree...................... | $   650.71 |
| Mrs. Starrett should be charged with one-half | |
| Simms certificate......................... | 2,010.00 |
| One-half Rankin certificate.................. | 4,126.65 |
| Cash paid her before final report.............. | 994.47 |
| "   "   "   after   "   "   .............. | 1,633.24 |
| | $8,765.36 |

leaving balance due her according to the theory of the decree only $308.31.

In any view that can be taken the decree is erroneous.

It will therefore be reversed and the cause remanded.